## A. S. McCAMANT ET AL. V. M. D. ROBERTS.

(Case No. 5552.)

1. EVIDENCE—JUDGMENT—The purpose for which a judgment is sought to be introduced as evidence often and most generally determines whether it is admissible. If it is offered as proof of the mere fact that it was rendered and those legal consequences which result from that fact, it is always admissible, even as against strangers to it.

2. SAME—But if the judgment be offered for a collateral purpose, to prove some fact upon the supposed existence of which the judgment is founded, it is not admissible in the determination of matters of private right as against strangers to the proceeding in which it was rendered, except it be one of those matters of a public nature in which the proceeding is termed *in rem*, and from public considerations is held to be binding on all persons. (Authorities cited.)

3. SAME—See opinion for judgment held inadmissible under the facts proved.

APPEAL from Jones. Tried below before the Hon. Wm. Kennedy.

This was an action of trespass to try title. The petition of M. D. Roberts, filed August 23, 1883, asserted title to one-third of a league of land in Jones county, it being the site of Old Fort Phantom Hill. The answer of defendants contained a plea of "not guilty," and a special plea setting forth their title. The trial resulted in a verdict and judgment for plaintiff. The facts are stated in the opinion of the court.

*Chas. I. Evans*, for appellants, on the point discussed in the opinion, cited : Morrison *v.* Chandler, 44 Tex., 24 ; Morrison *v.* Loftin, 44 Tex., 17 ; Chandler *v.* Tarbox, 27 Tex., 139 ; P. D., art. 1000 ; McCoy *v.* Crawford, 9 Tex., 353.

*John Bowyer*, for appellee, cited : Wharton on Ev., 237, 820, 823 ; Freeman on Judg., 416 ; Barr *v.* Gratz's Heirs, 4 Wheat., 213 ; 1 Greenl., 575 ; Cox *v.* Bray, 28 Tex., 247.

STAYTON, ASSOCIATE JUSTICE.—The land in controversy was patented to William T. Evans, on December 11, 1861, and through a person of that name, who testified that he was the person to whom the certificate issued on which the land was granted, the appellants claim by a deed executed April 23, 1883.

The appellee claims the land through a deed made to him by W R. Baker, dated October 11, 1882. Baker claimed to be the owner of the land certificate on which the grant was made through conveyances made by several persons down to himself. all of which, except the conveyance claimed to have been made by the original grantee to one Charles Chamberlain, were properly admitted in evidence.

It was claimed that Wm. T. Evans, the original grantee, conveyed the certificate, which was for his headright one-third of a league, to Charles Chamberlain, by a writing dated June 21, 1841 ; but the instrument evidencing that conveyance was not produced, nor was there any direct evidence of the fact that it was ever executed.

The Wm. T. Evans, who testified in the cause, through his deposition, formerly taken to perpetuate his evidence, in addition to stating that he was the identical person to whom the land certificate and patent issued, denied that he had ever sold the land certificate to any person.

There is much evidence going to show that W. R. Baker, since sometime in the year 1851, asserted claim to the duplicate land certificate through a purchase at a sale made by the administrator of the estate of Charles Chamberlain, and that he located the land, paid taxes on it, and claimed it until he sold to the appellee. There is also some evidence tending to show that the person who testified and claimed to be W. T. Evans, the original grantee, caused the land to be located, that he paid taxes on it for a few years, and claimed it.

There was no effort made to prove that headright or other land certificates issued to more than one person by the name of Wm. T. Evans, from the board of land commissioners for Harrisburg county, in the year 1838, or at any other time. The certificate on which the land

was granted (though a duplicate) issued in that year and from that board. There was no offer made to prove the actual execution of a conveyance of the land certificate by Wm. T. Evans to Charles Chamberlain, but there was evidence that an instrument, which had been lost, purporting to be such a conveyance, did exist as early as the year 1851. The evidence bearing on the question of identity of the Wm. T. Evans who conveyed the land to the appellants, or those through whom they claim, and the person to whom the land was granted, other than the evidence of the person who so conveyed, who testified by deposition on June 12, 1883, need not be stated.

From the facts thus stated it will be seen that the vital question in the case was: Did the Wm. T. Evans, to whom the land was patented, sell the land certificate to Charles Chamberlain? To make that proof in the case, the plaintiff, over the objection of the appellants, was permitted to introduce in evidence a judgment rendered in the district court for Shackelford county, on February 21, 1882, in a suit instituted by W. R. Baker, against the unknown heirs of Wm. T. Evans, to remove cloud from the title. That judgment recites that the unknown heirs of Wm. T. Evans were cited by publication, and that counsel were appointed by the court to represent them; and it declares that the land certificate, under which the land was granted, was conveyed by Wm. T. Evans to Charles Chamberlain, by a written instrument, dated June 11, 1841, acknowledged by Evans before a proper officer. The judgment then proceeds to establish that instrument, and declares that the judgment thus rendered, when recorded, shall have all the effect which the original instrument could have, and that it "may be used in evidence in any of the courts of this state, with like effect as the original." This ruling of the court is assigned as error.

It is evident that neither the appellants, nor any person through whom they claim, were parties to the suit in which that judgment was rendered; as to them it was *res inter alios acta*, and could have no effect whatever. The purpose for which a judgment is sought to be introduced, often and most generally determines whether it is admissible. If the judgment be a fact relevant to the issue to be determined, it may be admitted, although those against whom it is sought to be used were not parties to the action in which it was rendered. As if one seeks to deraign title through sale under an execution, he may and must show that a judgment was rendered which authorized that execution to issue, and this he may show, notwithstanding the adverse party was not a party to the action in which the judgment was rendered.

So, in all cases in which judicial sales are made, the judgments under which they are made and confirmed may be given in evidence,

even against a stranger to the proceeding. If it be shown that A. had title to land at a given time, and that subsequently a decree was rendered in an action to which A. and B. were parties, by which the title of A. was divested and vested in B., in a contest between B. and a stranger to that action, the decree will be admissible.

"In treating of the admissibility and effect of judgments, decrees and verdicts, it is important to consider, in the first place, for what purpose a verdict or judgment is offered in evidence; whether to establish the mére fact that such a verdict was given, or judgment pronounced, and those legal consequences which result from that fact, or, secondly, with a view to a collateral purpose; that is, not to prove the mere fact that such a judgment has been pronounced, and so to let in all the necessary legal consequences of that judgment, but as a medium of proving some fact as found by the verdict, or upon the supposed existence of which the judgment is founded." Starkin on Ev., 287; 1 Greenl., 539; Wharton on Ev., 821, 823, 1278; Abbott's Trial Ev., 100; Life Insurance Company v. Tisdale, 91 U. S., 238. For the first purpose indicated, judgments are always admissible, even as against strangers to them, but for the second purpose they are not admissible in the determination of matters of private right, as against strangers to the proceedings in which they are rendered, except in those matters of a public nature in which the proceeding is termed *in rem*, and from public considerations held to be binding on all persons.

Cases in which judgments will be admissible against strangers to the proceedings in which they are pronounced are illustrated by the cases we have supposed, and others will readily suggest further illustrations. Was the judgment in favor of W. R. Baker and against the unknown heirs of Wm. T. Evans introduced for a purpose for which we have seen it would be admissible? Certainly not; but for the purpose of showing two facts upon which that judgment is founded—for the purpose of showing by the judgment that the facts existed, without which it could not legally have been rendered:

1. It was offered, evidently, to show that Wm. T. Evans, to whom the land was granted, was dead, for a judgment could not be rendered against his heirs, known or unknown, so long as he lived; for until his death he had no heirs. It was not admissible for any such purpose, and was utterly ineffective upon one who claims through him; while, had it been proved that he was dead when the proceeding in which the decree was rendered was instituted, if the court acquired jurisdiction over his unknown heirs, then it would have been not only admissible against one subsequently purchasing from such heirs, but conclusive of

the rights of the person in whose favor the decree was rendered. Such would be the legal result of a decree rendered under such circumstances.

Proof of the death of W. T. Evans, and as a result, that the persons brought before the court represented the title which it was admitted he once had, and so, as his heirs, could not be thus made. Archer v. Bacon, 12 Mo., 156; Duncan v. Holmes, 8 Gratt., 69; Lovell v. Arnold, 2 Munf., 167; Insurance Company v. Tisdale, 91 U. S., 238; and elementary authorities before cited.

2. It was offered to prove that W. T. Evans, on June 11, 1841, conveyed the certificate, by virtue of which the land was granted, to Charles Chamberlain; in short, it was offered as a link in the chain of the plaintiff's title.

That it was not admissible for such a purpose is too clear, in the absence of evidence tending to show that the persons who were made defendants in the suit in which that decree was entered were the representatives, as heirs, of Wm. T. Evans. It is contended that it was for the jury to determine whether Wm. T. Evans, to whom the land was granted, was the person who testified in the case, and whether the person to whom the grant was made was living at the time the decree was rendered; and these propositions would both be true in a case in which there was any evidence upon which the jury would be authorized to find that the witness was not the person to whom the grant was made, and that such person was dead.

In this case, however, there was no evidence tending to show that the land was not granted to the Wm. T. Evans who was alive when that decree was rendered, and who subsequently testified in this case. There were no facts proved from which the death of the grantee of the land could be presumed. Even the witness Baker, was unable to state any fact tending to show his death. To admit the decree without some evidence that the person from whom the appellants bought was not the grantee, and without some evidence that the grantee was dead, was but to mislead the jury and to give them to understand that they might believe these things to be true without evidence on which to found such belief, or that there was evidence before them of such facts, and so, in the face of direct evidence to the contrary, which, if false, ample means for detecting and proving its falsity were placed within reach of the plaintiff by the testimony of the man who claimed to be the original grantee. The decree ought to have been excluded unless there was some proof made of the facts which would give to it effect, and the burden of proof in this respect was on the appellee.

That the charge of the court may have been correct does not cure the illegal admission of such evidence, which the jury were at liberty

to look to, as the case was submitted, to prove the very facts on which its admissibility depended. There are many other assignments of error, some of which are untenable, and others relate to matters not likely to arise upon another trial, and it is not deemed necessary now to consider them.

For the error indicated, the judgment of the court below will be reversed and the cause remanded. It is so ordered.

REVERSED AND REMANDED.

[Opinion delivered May 18, 1886.]