McDOEL v. JORDAN et al.

(Court of Civil Appeals of Texas. Dallas. Dec. 7, 1912.)

1. WILLS (§ 433*)—PROBATE—EFFECT—EVIDENCE OF TITLE.

Where title to land is claimed by a devise, evidence of the will of the alleged decedent and the proceeding of the county court admitting it to probate is admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 924–936; Dec. Dig. § 433.*]

2. DEATH (§ 4*)—EVIDENCE—SUFFICIENCY—"WAR"—"REPORT."

In an action to recover land which plaintiff claimed by devise, where there was testimony that the witness knew the testator in 1862 and understood that he died during the war, such being the report, the word "war" must be understood as the war between the states, and "report" as meaning common rumor.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, pp. 6106–6107; vol. 8, pp. 7387–7388.]

3. EVIDENCE (§ 314*)—HEARSAY.

After the lapse of a long period of time, death may be proven by hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1168–1173; Dec. Dig. § 314.*]

4. NAMES (§ 18*)—EVIDENCE—SUFFICIENCY.

Where the name of the grantee of a patent was identical with that of the signer of a will who was named in probate proceedings, the identity of names will, in the absence of other evidence, sufficiently establish the fact that the testator was the grantee named in the patent.

[Ed. Note.—For other cases, see Names, Cent. Dig. § 17; Dec. Dig. § 18.*]

5. APPEAL AND ERROR (§ 1051*)—REVIEW—HARMLESS ERROR.

Where there was sufficient competent evidence to support a finding of the trial court, the fact that incompetent evidence was introduced does not constitute reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1051.*]

Appeal from District Court, Freestone County; H. B. Daviss, Judge.

Action by Ellen Jordan and others against C. J. McDoel. From a judgment for plaintiffs, defendant appeals. Affirmed.

W. R. Boyd, of Teague, for appellant. W. W. Ballew, of Corsicana, and R. L. Williford and T. H. Bonner, both of Fairfield, for appellees.

RASBURY, J. Upon appropriate pleading in trespass to try title, appellees Ellen Jordan and her husband, Thomas A. Jordan, recovered judgment in the trial court against appellant, C. J. McDoel, for the title and possession of 480 acres of land out of the Thomas B. Wylie survey in Freestone county, Tex. Appellant McDoel recovered judgment against his grantor William H. Leuhrmann, who was a party to the suit, for $2,551.20, the amount paid in good faith for the land. There is no appeal by Leuhrmann, nor does he file brief or other appearance.

Appellees in proof of their title introduced in evidence (1) certified copy of patent to the land in controversy from the state to A. M. Dunn, assignee of Thomas S. Wylie; (2) application of Thomas A. Jordan and E. C. Jordan (appellees) to the chief justice of Navarro county to probate the will of Alexander M. Dunn, alleging his death in 1863, and that he left a will with the county clerk of Navarro county; (3) the will of A. M. Dunn by which he devised all his estate to Miss Ellen Wilder, including "all lands and tenements, farms, etc., more fully described in patents, deeds, and bonds, now in my possession * * * and lying subject to my order in the General Land Office; (4) proof of the execution of the will made before the county court by Hugh Ingram, showing the execution of same by A. M. Dunn on April 3, 1862, in the manner and form provided by law; (5) the decree of the county court admitting the will to probate and appointing the applicants administrators of the estate with the will annexed, and appointing appraisers, etc.; (6) appellee Ellen Jordan, who testified that she was 67 years of age and the wife of Thomas A. Jordan, and that her maiden name was Wilder; that she lived from her birth in Alabama until 17 years of age, when she came to Texas and lived in Freestone county until she reached the age of 20 years, when she married and went to Henderson county, Tex.; after a residence of about six years in Henderson county she removed to Navarro county and resided there about seven years, when she and her husband left and have lived at various places since and now reside in Yuma, Ariz.; that she first learned that she had an interest in the land in controversy through her counsel by letter; that she claims title to the land through the will made by her uncle Alexander M. Dunn, who signed his name to the will as A. M. Dunn, and bequeathed her the same; that she has no deed to the land; (7) deposition of

Preston Owen who testified that he is 66 years old and has resided at Kerens, Navarro county, since 1852; that he was acquainted with A. M. Dunn, who formerly resided in Navarro county, Tex.; that he knew Dunn about 1862 and understood that he died during the war; that he (Dunn) was a grown man when he knew him; when asked on cross-examination, "Do you know, as a matter of fact, that A. M. Dunn is dead?" the witness answered that the report was that he died during the war; that he knew Miss Ellen Wilder, does not know where she lived, (but) she was with A. M. Dunn, and his understanding is she is Dunn's niece; that she married T. A. Jordan and several years after the war they lived near Kerens, but subsequently moved away. The foregoing is, in substance, all the testimony of the appellees shown by the record. The appellant offered, and there was admitted in testimony (1) general warranty deed to the land in controversy from R. W. Compton, T. R. Watson, J. B. Watson, and John Riley to Wm. H. Leuhrmann, dated November 14, 1904, and filed for record April 12, 1905, and properly recorded, the consideration being $1,300; (2) deed from Leuhrmann et ux. to appellant for same land for consideration of $1,920, properly acknowledged, filed, and recorded.

[1] Appellant by his first assignment of error contends that the court erred in overruling his demurrer to the sufficiency of the testimony offered by appellees and in refusing to render judgment for appellant. Under this assignment, the proposition is asserted that an application for and grant of administration is not evidence of death of alleged decedent in a collateral inquiry. In explanation of this proposition, it may be said that the assignment points out, in substance, all the evidence offered to prove the death of A. M. Dunn, under whose will appellees claim title, which consists in part of the proceedings had in the county court, by which the will of A. M. Dunn was admitted to probate. Conceding that the proposition states a correct principle of law, and waiving the point that there may be a marked difference in the admissibility of proceedings in administration to prove the death of a decedent, and those by which a last will and testament are admitted to probate to prove the same fact, it seems clear to us that the proceedings complained of were clearly admissible as muniments of appellees' title to the land. Wills, and the proceedings of the county court admitting them to probate, form necessary and important links in the chain of many land titles, and it cannot be successfully maintained that they are inadmissible for that purpose. Whitman v. Haywood, 77 Tex. 558, 14 S. W. 166. The case cited was a suit to establish boundary lines, and the plaintiff offered the will of Thomas Baren, through whom he claimed title to the land, with the order of the county court admitting the same to probate, which was objected to in the trial court and assigned as error in the Supreme Court, which latter tribunal held that all that was necessary to make the same admissible for such purpose was to show that the order probating the will was made by a court having jurisdiction to do so. These proceedings were also admissible to prove appellees' title, because they were facts relevant to the issue to be determined. In no other way could title to the land be shown by appellees. Similarly one who seeks to deraign title through sale under execution may and must show that a judgment was rendered which authorized the execution under whch he purchased to issue. McCamant v. Roberts, 66 Tex. 262, 1 S. W. 260. Hence we conclude that, for the reasons stated, the proceedings were clearly admissible, and that the court did not err in that respect.

[2, 3] But appellant, by sufficient assignment and appropriate proposition, asserts that, since the court could not look to the probate proceedings as establishing Dunn's death, the remaining evidence was insufficent because it did not show by a preponderance of competent testimony that A. M. Dunn, under whose will appellees claim title, was in fact dead. The evidence adduced to establish the death of Dunn consisted of the testimony of Preston Owen, who said he knew Dunn in 1862, when he resided in Navarro county, and that he understood that he died during the "war," and on cross-examination he said Dunn was a grown man when he knew him, and that the "report" was that he died during the "war." This was all the testimony adduced upon the trial relative to the death of Dunn, and as a consequence is a preponderance of the evidence. Appellant, however, says it is not competent. We do not think we improperly extend the rules of evidence and legal construction in concluding that Preston Owen meant the war between the states when he speaks of Dunn dying during the "war," especially since he puts his last knowledge of him at 1862. Those who participated in that stirring event, as well as those who have come since, or were too young to engage in its heroic contests, know that in everyday language it is described as "the war," and that common knowledge would lead us to understand that Preston Owen meant the war between the states when he adopted the term commonly used to describe same. Then if we can safely assume, as we are persuaded we may, that the witness intended to say that he died during that period, does the further statement that he "understood" that Dunn died and that the "report" was that he died during that period furnish sufficient evidence to support the conclusion of the trial judge that he is dead? "Report," applied to the testimony of Preston Owen, means "an account brought back; a tale carried; a story circulated; hence rumor or common fame"—

in short, hearsay. "Understood" means "implied, assumed, or apprehended." In other words, the effect of Preston Owen's testimony is that rumor and common fame, or "the account brought back" at that period, had it that Dunn died during the war between the states. The right to prove death by hearsay after the lapse of such a long period of time is well settled, and citation of authorities is unnecessary. Counsel does not deny the rule, but attacks the evidence adduced as not being even hearsay. We have indicated why we think the proof as made is sufficient and competent, particularly so when the record fails to show any evidence of a contrary nature.

[4] We think there is no merit in appellant's contention that the evidence is insufficient to support the judgment of the court that the A. M. Dunn named in the probate proceedings, and who signed the will, was the same A. M. Dunn named in the patent offered in evidence by appellees. The names are identical, and, in the absence of any other evidence, that fact is sufficient to support the conclusion of the trial court that they are the same person.

[5] Nor do we think that the fact that the trial court considered the probate proceedings as proof of the death of A. M. Dunn material, if there can be found in the record sufficient other facts to sustain his conclusions, and we have indicated at another place in this opinion that the evidence of Preston Owen would alone be sufficient to support such a finding.

Finding no reversible error in the record, the judgment of the trial court is affirmed.