**George ALLEN and Norma F. Allen,
Appellants,**

v.

**GREAT LIBERTY LIFE INSURANCE
COMPANY, Appellee.**

No. 4740.

Court of Civil Appeals of Texas,
Eastland.

March 14, 1975.

Rehearing Denied April 11, 1975.

Charles P. Storey, Dallas (Storey, Armstrong & Steger, Dallas), for appellant.

Stephen Philbin, Dallas (Locke, Purness, Boren, Laney & Neely, Dallas), for appellee.

McCLOUD, Chief Justice.

This is a fiduciary relationship case involving the validity of a transaction between a corporation and its president.

Plaintiff, Tom I. McFarling, Liquidator-Receiver for the Liquidation Division of the State Board of Insurance and Temporary Receiver of Great Liberty Life Insurance Company, a Texas corporation, sued defendants, George L. Allen and wife, Norma F. Allen, seeking cancellation of a release executed by Great Liberty discharging a $60,000 note and deed of trust executed by defendants in favor of Great Liberty.

Based on jury findings the trial court entered judgment against defendants canceling the release and holding the note and deed of trust valid. The judgment awarded plaintiff $60,000, the principal amount of the note, plus $36,537 accrued interest, and $9,653 attorneys' fees as well as $2500 exemplary damages. Defendants have appealed. We reverse and remand.

The record reflects that George L. Allen had served as president, a director, and a member of the executive committee of Great Liberty since 1958. In 1966 the Commissioner of Insurance advised Allen that because of capital impairment, Great Liberty could issue no new policies unless $60,000 was added to its capital. On May 4, 1966, the Board of Directors of Great Liberty resolved to accept as a gift a note from the Allens payable to Great Liberty in the sum of $60,000 secured by a deed of trust on property owned by the Allens. The resolution provided:

". . . that if and when the free and unassigned surplus of Great Liberty Life Insurance Company become available to such an extent and amount that the assets of the company will not be impaired or its sound operation affected, the

shareholders and directors shall make a contribution from the free and unassigned surplus of the company to the President, George L. Allen and Norma F. Allen, his wife, in the sum of money equal to the gift hereinbefore referred to; provided that such gift shall not impair the capital stock, reserves, or surplus of the company . . ."

The note and deed of trust were executed on May 30, 1966, and delivered to Great Liberty. The Commissioner of Insurance was notified of the transaction, and the note became an "admitted asset" of Great Liberty.

Great Liberty continued to experience financial difficulty. In late 1967 Allen met Jay Dodd, a resident of Arizona, and Allen, on behalf of Great Liberty, negotiated an agreement with Dodd whereby 52 percent of the Great Liberty stock would be exchanged for stock in First Texas Holding Company, a Dodd controlled company. The agreement was finalized by a written contract which stated that First Texas was to provide "sufficient assets to be used as substitution" for the $60,000 Allen note.

The Dodd agreement involved Great Liberty with an Arizona Corporation, C & S Land & Development Company. C & S executed two notes in favor of Great Liberty. The first note was in the principal sum of $65,000. The second note, dated March 12, 1968, was in the principal sum of $60,000. Both notes were secured by a "collateral assignment of beneficial interest" on Arizona property and both notes were signed by Jay Dodd as Secretary-Treasurer of C & S Land & Development Company. There is evidence that the $60,000 C & S note was to be substituted for the $60,000 Allen note.

On March 12, 1968, the shareholders and Board of Directors of Great Liberty passed resolutions authorizing the substitution and release of the Allen note and deed of trust provided the new securities met the requirements of Article 3.39 of the Insurance Code of Texas, V.A.T.S.[1] George Allen voted for the resolutions at both meetings.

Thereafter, the Insurance Commissioner received an appraisal of the Arizona property and advised Allen the appraisal was defective because it was based on "prospective" construction of recreational facilities. On April 18, 1968, Allen received a letter from an attorney who examined certain title documents affecting the Arizona property. The letter stated in part:

"The tax lien outlined in exception number 12 will be substantially reduced as indicated by Joe W. Meek in his letter of April 2, 1968, which is attached hereto and made a part hereof as Exhibit '3.' Only 50% of the beneficial interest of C & S Land Development Company, Inc. is conveyed to secure your mortgage; therefore, your security is not affected by the tax lien.

The Lis Pendens filed as the result of Civil Suit No. 24635 recorded in Book 399, pages 550–552 of the official records in Yavapai County, Arizona will affect a ⅛th interest in the property as evidenced by the papers in such cause of action on file with the District Clerk of said county, thereby not encumbering the 50% interest serving as collateral in this instance.

The Trust created by Trust Instrument No. 95299 places the beneficial interest in C & S Land and Development Company, Inc. and leaves said company

---

1. Plaintiff argues the C & S notes did not comply with the following provisions of Article 3.39: "Part II. Authorized Loans
    A life insurance company organized under the laws of this state may loan its several funds identified as follows, taking as collateral security for the payment of such loans the securities named below, and none other.

A. Any Of Its Funds Accumulations
Such company may loan any of its funds and accumulations on the following securities:
    1. First Liens Upon Real Estate.
First liens upon real estate, the title to which is valid and the value of which is at least one-third more than the amount loaned thereon.

with authority to convey all or any part thereof, therefore, giving Great Liberty Life Insurance Company a valid collateral assignment. It might be noted that a collateral assignment of beneficial interest is an instrument used in Arizona to convey an interest similar to the use of a deed of trust in Texas."

On April 30, 1968, the release of the $60,000 Allen note and deed of trust, the subject of this suit, was executed by a vice president on behalf of Great Liberty.

On September 4, 1970, the Insurance Commissioner ordered Great Liberty placed in conservatorship. The company was placed in temporary receivership on November 9, 1971. The Insurance Liquidator employed an Arizona attorney to determine the status of the Arizona property. Suit was filed in the Superior Court of Maricopa County, Arizona, on the $65,000 and $60,000 notes executed by C & S Land & Development Company. The Arizona court held that Great Liberty Life Insurance Company had no rights under the notes or the collateral assignment of beneficial interest.

Defendants first contend the court erred in entering judgment against them since the jury found no improper conduct on the part of George L. Allen. However, in answer to Special Issue Number 1 the jury found that the release on April 30, 1968 of the Allen note and deed of trust, was not fair to Great Liberty Life Insurance Company.

■■■ Officers and directors of a corporation are fiduciaries and when an officer or director is involved in a transaction with the corporation, the officer or director has the burden of establishing the "fairness" of the transaction to the corporation. International Bankers Life Insurance Company v. Holloway, 368 S.W.2d 567 (Tex.1963); Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715 (1961); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1940); See also Stephens County Mu-

seum, Inc. v. Swenson, 517 S.W.2d 257 (Tex.1974). Defendants' contention is overruled.

■■■ Defendants next argue the action asserted by plaintiff was barred by the two year statute of limitations. Article 5526, Vernon's Ann.Tex.Rev.Civ.Stat. Defendants say plaintiff's suit was a tort action for fraud. We disagree. Plaintiff's trial pleading seeks cancellation of the release of the Allen note and deed of trust. We hold the four year statute of limitations is applicable and plaintiff's suit is not barred. Article 5529, Tex.Rev.Civ.Stat., Evans v. Southern Methodist University, 87 S.W.2d 918 (Tex.Civ.App.—Eastland 1935, no writ); Larson v. Sterling Mutual Life Ins. Co., 134 S.W.2d 717 (Tex.Civ.App.—Galveston 1939, no writ).

Defendants next contend the trial court committed reversible error in admitting the judgment containing findings of facts and conclusions of law, entered in the Superior Court of Maricopa County, Arizona, wherein Tom I. McFarling, Conservator for Great Liberty Life Insurance Company, was plaintiff and C & S Land & Development Company along with various other parties were defendants. We agree. Neither George L. Allen nor Norma F. Allen were parties to that proceeding.

Defendants properly objected to the admission of the judgment containing the court's "Findings of Fact". The Arizona court found among other things that Dodd had no right or authority to act on behalf of C &·S Land & Development Company.

The court in Davis v. Zapata Petroleum Corporation, 351 S.W.2d 916 (Tex.Civ. App.—El Paso 1961, writ ref. n. r. e.), stated the rule as follows:

> "In general, a judgment in another cause finding a fact now in issue is not admissible. The fact that another jury had theretofore, in another case, determined the very questions at issue in the present trial would have had a strong tendency to induce the jury in the subse-

quent case to reach the same conclusion, and would therefore have been very prejudicial. Such judgment, under well settled rules, could not have been introduced in evidence to establish the facts on which it was rendered. Jones v. Teat, Tex.Civ.App., 57 S.W.2d 617, aff'd, Tex.Com.App., 89 S.W.2d 987; Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162 (err. ref.); McCormick & Ray, Texas Law of Evidence, Section 1279.

While we recognize the rule announced in McCamant v. Roberts, 66 Tex. 260, 1 S.W. 260, that a judgment is always admissible in evidence for the purpose of showing the fact of its own existence, it is not admissible for the purpose of showing what matters were adjudicated except where the parties and the subject matter in each suit are the same, or where the matter determined was of a public nature (in rem) and from public considerations should be considered binding upon all persons."

■ Plaintiff contended the release of the Allen note and deed of trust was not fair to Great Liberty because Dodd had no authority to execute the two C & S notes and, therefore, Great Liberty received nothing of value for its substitution of the $60,000 C & S note for the $60,000 Allen note. The only evidence that Dodd had no signatory authority was the finding by the Arizona court which was inadmissible. We hold that the prejudicial effect of the inadmissible evidence probably resulted in the rendition of an improper judgment.

The judgment of the trial court is reversed and the cause remanded. In view of our holding it is not necessary to pass upon defendants' other points.

## ON APPELLEE'S MOTION FOR REHEARING

■ As a general rule a judgment is admissible against a stranger thereto for the purpose of proving the mere existence of the judgment and the legal consequences

resulting therefrom. McCamant v. Roberts, 1 S.W. 260 (Tex.1886). As stated, however, in Davis v. Zapata Petroleum Corporation, 351 S.W.2d 916 (Tex.Civ. App.—El Paso 1961, writ ref, n. r. e.), a judgment is not admissible:

". . . for the purpose of showing what matters were adjudicated except where the parties and the subject matter in each suit are the same, or where the matter determined was of a public nature (in rem) and from public considerations should be considered binding upon all persons."

Great Liberty filed suit against C & S Land and Development Company and other defendants in Arizona seeking recovery on the $65,000 and $60,000 notes as well as foreclosure of its "collateral assignment of beneficial interest" covering certain Arizona property. Neither George L. Allen nor Norma F. Allen were parties to that suit.

■ We think that part of the Arizona judgment, wherein the court ordered and decreed that judgment be entered against Great Liberty and in favor of C & S Land and Development Company and the other defendants, was admissible to show the existence of the judgment and its legal consequences. We do not think the finding of fact by the court, included within the judgment, that Dodd had no right or authority to act on behalf of C & S was admissible.

Great Liberty's theory of recovery was that the release of the $60,000 Allen note and deed of trust was not fair to the corporation and was not free from fraud. The record clearly reflects that Great Liberty attempted to show the transaction was unfair and fraudulent by showing that Dodd had no authority to execute the instruments and, therefore, the C & S notes were of no value.

Great Liberty also contends that defendants failed to properly object to the introduction of the Arizona court's findings of fact. We disagree. The objection was sufficiently specific and expressly chal-

lenged the admissibility of the court's findings of fact.

Great Liberty further argues there is no showing of reversible error even if the findings of fact were inadmissible and assuming proper objection. We cannot agree with this contention. The introduction of the finding of fact by the Arizona court that Dodd had no authority to act on behalf of C & S was highly prejudicial. There can be no doubt that such inadmissible finding induced the jury in this case to reach the same conclusion.

Great Liberty says in the instant case "the record reflects no importance" was attached to the findings of the Arizona Court in support of the judgment. We disagree.

After defendants' objection was overruled the findings of fact were read to the jury. In his closing argument Great Liberty's attorney stated:

"Truth of the matter is, he never had anything to begin with, there never was anything because he got out there and found Jay Dodd didn't even have authority to execute those instruments on behalf of C & S Land Development Company, but did George Allen do anything to find out about it? Here is the maker of the note, C & S Land Development Company and Jay Dodd, but he didn't do a thing to find out about it,"

The attorney further argued:

"What did Great Liberty Life Insurance Company get for the $60,000.00 George Allen note? They got a piece of paper there, an order by the Court in Arizona saying 'you ain't got nothing, not nothing.' In fact, the fellow that signed it didn't even have authority to execute it on behalf of the folks he purported to sign it for."

While discussing Special Issue Number 1, Great Liberty's attorney told the jury:

"You can answer both of those issues that it was not entirely and inherently fair, that it was not executed free from fraud and with good faith, even if you believe George Allen didn't have anything to do with it, even if you believe Jay Dodd is the cause . . ."

We find nothing in the record to cause us to change the judgment heretofore entered. The motion for rehearing is overruled.