Maria Emma SILVA, as next friend of
E.L.S., a minor child, Appellant,

v.

Linda ENZ, individually and as Adminis-
tratrix of the Estate of David Veston
Enz, deceased, and as next friend of
Jason Charles Enz, a minor child and
Jason Charles Enz, a minor child, indi-
vidually, Appellee.

No. 13–91–652–CV.

Court of Appeals of Texas,
Corpus Christi.

April 29, 1993.

Rehearing Overruled May 27, 1993.

Ruben R. Pena, Martinez, Barrera & Pena, Harlingen, Michael E. Hearn, Jones, Galligan & Key, Weslaco, for appellant.

Jose E. Garcia, Garcia & Ramirez, McAllen, Joy M. Soloway, Fulbright & Jaworski, Houston, for appellee.

Before SEERDEN, KENNEDY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from a paternity suit. Maria Silva, as next friend of her daughter E.L.S., appellant, brought this action seeking to establish that David Veston Enz, deceased, is E.L.S.'s biological father. The trial court entered judgment in favor of Enz's minor son, the appellee and the only remaining defendant at trial, based upon a jury's failure to find that Enz was E.L.S.'s biological father. Silva appeals, raising six points of error complaining about the legal and factual sufficiency of the evidence and the trial court's action in excluding from evidence a final judgment in a related lawsuit whereby the court found that Mr. Silva was not the biological father of E.L.S. We affirm the trial court's judgment.

By points one through five, Silva complains about the sufficiency of evidence supporting the answer to the only question submitted to the jury. The question submitted to the jury was "[d]o you find that David Veston Enz was the biological father of [E.L.S.]?". The jury answered "no." Silva argues that the evidence conclusively established as a matter of law that Enz was the biological father and, in the alternative, that the jury's answer was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Silva argues that the jury's failure to find Enz as E.L.S.'s biological father was the result of passion and prejudice and was in total disregard of the evidence presented.

When an appellant attacks the legal sufficiency of a failure to find an issue upon which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In reviewing

an "as a matter of law" challenge, we conduct a two-step analysis. Initially, we examine the record for evidence supporting the failure to find, while ignoring all evidence to the contrary. *Id.; see also Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Secondly, if there is no evidence to support the failure to find, we then examine the entire record to determine whether the proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex.1986). If the contrary proposition is established conclusively by the evidence, the point will be sustained. *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ Silva's alternative contention is that the jury's finding, upon which she had the burden of proof, is against the great weight and preponderance of the evidence. The applicable standard of review requires us to examine the entire record to determine whether some evidence supports the failure to find, and then determine, in light of the record, whether the failure to find is manifestly unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). We heed the supreme court's admonishment that we are to be mindful that the jury was not convinced on the issue by a preponderance of the evidence. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Reversal is warranted only when the great weight of the evidence supports an affirmative answer. *Id.; Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

■ The general rule is that the trier of fact, in this case the jury, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Garcia v. Dependable Shell Core Machines, Inc.*, 783 S.W.2d 246, 248 (Tex.App.—Corpus Christi 1989, no writ). In resolving contradictions and conflicts, the jury may choose to believe all, part, or none of the testimony of any one witness in arriving at the finding it concludes was the most reasonable under the evidence. *Id.*

Silva contends that she testified clearly, unequivocally, and pointedly that Enz was the child's biological father. She contends that there was no contrary evidence presented.

At trial, the only witness to testify was Maria Emma Silva, E.L.S.'s mother. The evidence at trial showed that Silva met Enz at Su Clinica Familiar soon after he arrived in 1973. She was working there and Enz was a doctor on staff. When they met, Silva and Enz were both married to other people. Silva explained that Enz was having trouble in his marriage and she believed that issue brought them together and then they fell in love. Silva separated from her husband, Noe Silva, in early 1975 and continued to see Enz.

While separated from her husband, in January 1976, Silva testified that she became pregnant with Enz's child. She knew that it was Enz's child because the only sexual relations she had were with Enz. Later that year, approximately two months before E.L.S.'s birth, Enz moved to Houston and Silva and her husband ended their separation. E.L.S.'s birth certificate, baptismal records, and school records list Noe Silva as E.L.S.'s father.

Silva testified that David Enz was the father of E.L.S. although she was married at the time of conception to Noe Silva. After E.L.S.'s birth, Silva stated that Enz helped support E.L.S., and although he moved to Houston, he telephoned her and talked to E.L.S. At trial, Silva introduced letters into evidence which she claimed Enz wrote to her in which he recognized E.L.S. as "our daughter." During cross-examination, when she was questioned about the letters, she acknowledged that one of the letters had no date while the other, though dated with the month and day, showed no year.

Silva also testified about her relationship with her husband. They have been married thirty years and have six children, two of which were born after E.L.S. Silva admitted that she and her husband have always credited themselves as E.L.S.'s parents. Also, Silva stated that by this lawsuit, she was not seeking to have E.L.S.'s documents changed to reflect Enz as the biological father.

The testimony of an interested witness may establish a fact as a matter of law *only* if the testimony is clear, direct, and positive, and there are no circumstances tending to discredit or impeach it. *See Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989). Additionally, it is not necessary for one side to negate by affirmative evidence the evidence presented by the other side. The jury is free to simply disbelieve such evidence. *McInnes v. Yamaha Motor Corp.*, 659 S.W.2d 704, 708 (Tex.App.—Corpus Christi 1983), *aff'd*, 673 S.W.2d 185 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). The uncorroborated testimony of an interested witness is not binding upon a jury, but raises an issue of fact. *Greenway Bank & Trust v. Smith*, 679 S.W.2d 592, 597 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citing *R.T. Herrin Petroleum Transp. Co. v. Proctor*, 161 Tex. 222, 338 S.W.2d 422, 427 (1960)). Moreover, the jury is free to reject an interested witness's uncorroborated testimony based upon its observation of the witness's demeanor, attitude, and similar factors incapable of reproduction in the written record. *Id.* at 598.

After carefully reviewing the evidence, we conclude that it was not error for the jury to fail to find that Enz was the biological father of E.L.S. Silva's uncorroborated testimony was not direct, clear, and positive, and there were circumstances tending to discredit or impeach her testimony. No witness other than Silva authenticated Enz's handwriting. Additionally, we note that there were no blood tests taken relating to the case. Silva's testimony did not establish that Enz was E.L.S.'s biological father as a matter of law. Additionally, we conclude that the jury's finding was not against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule points one through five.

By point six, Silva contends that the trial court erred by excluding from evidence a court order from a related case in which the court found that Silva's husband was not E.L.S.'s biological father. We conclude that the trial court did not err by refusing to admit the prior judgment.

To obtain reversal of a judgment based on error in the admission or exclusion of evidence, appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); Tex.R.App.P. 81(b)(1). Reversible error does not usually occur unless appellant can demonstrate that the case turns on the particular evidence admitted or excluded. *See Shenandoah Assocs. v. J & K Properties, Inc.*, 741 S.W.2d 470, 493 (Tex. App.—Dallas 1987, writ denied); *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

At trial, Silva attempted to introduce the final judgment from the earlier paternity suit. Silva's reason for attempting to introduce the previous judgment was because opposing counsel brought up the issue of Mr. Silva's paternity or nonpaternity during voir dire and his opening statement. Silva contends that the prior judgment was competent evidence to rebut opposing counsel's statements. Silva argues on appeal that by the jury's refusal to find Enz was E.L.S.'s biological father, the jury necessarily concluded that Mr. Silva was the biological father. We disagree with Silva that the jury necessarily reached this conclusion.

Appellee objected at trial to the admission of the prior judgment which disestablished Mr. Silva as E.L.S.'s biological father. Appellee's objection was that the court was without the ability to judicially notice a judgment from another proceeding to which his client was not a party. Appellee asserted that he was a stranger to the earlier judgment and should not be bound by it in any way. Since the parties and issues in the case before us were not identical to the parties and issues in the prior case, the prior judgment is inadmissable. *See John Deere Co. v. May*, 773 S.W.2d 369, 374 (Tex.App.—Waco 1989, writ denied).

Appellee also argues on appeal that the prior judgment is not relevant, or if relevant, its prejudicial effect greatly outweighed its probative value. Relevant evidence means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Civ.Evid. 401. The trial court has the discretion to exclude evidence on the basis of unfair prejudice, despite its logical relevance. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989); *CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785, 789 (Tex.App.—Texarkana 1992, writ denied); Tex.R.Civ.Evid. 403. We therefore, review the record to determine whether the trial court committed error and if so that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee,* 765 S.W.2d at 396.

We find no error in the trial court's discretionary decision to exclude the prior paternity judgment. Even if the prior order was somehow relevant, we conclude that it was not an abuse of discretion for the trial court to determine that its probative value would have been substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex.R.Civ.Evid. 403.

The case before us was brought by Silva to establish that Enz is the biological father of E.L.S. The prior judgment established that Mr. Silva was not the father of E.L.S. and it sheds no light on who, other than Mr. Silva, is E.L.S.'s biological father. We conclude that the trial court did not err in its discretion when refusing to admit the prior judgment in evidence. We overrule point six.

We affirm the trial court's judgment.

Dissenting opinion by FEDERICO G. HINOJOSA, Jr., J.

FEDERICO G. HINOJOSA, Jr., Judge, dissenting.

I respectfully dissent. The majority would allow a biological father to argue to a jury that the laws of this State presume that the mother's husband is the child's father and then prevent the child from rebutting that argument by offering a judicial decree that scientifically accepted paternity tests have proven that the mother's husband is not the father of the child.

The majority opinion would allow the courts of this State to hinder an illegitimate child's attempt to establish a legal relationship with his or her biological father; a relationship that gives the child rights that the State should affirmatively act to protect. I would hold that the final judgment in the related lawsuit, establishing that Mr. Noe Silva is not the father of E.L.S., is relevant to issues placed before the jury and is admissible under TEX.FAM. CODE ANN. § 12.02(b) (Vernon Supp.1993) to rebut the presumption that E.L.S. was Mr. Silva's child. Accordingly, I would sustain appellant's sixth point of error, reverse the judgment of the trial court and remand the case for a new trial.

The prior judgment which Mrs. Silva offered as evidence that Mr. Silva is not E.L.S.'s father is relevant to the issues involved in this case. Evidence is relevant if it merely has *any tendency* to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CIV. EVID. 401. A piece of evidence does not have to rise to any level of conclusiveness to be relevant. Appellees contended at trial that 1) E.L.S. was born to Mrs. Silva during the marriage to Mr. Silva, 2) Mr. and Mrs. Silva are still married, and 3) Mr. and Mrs. Silva had two children after E.L.S. was born. Evidence that Mr. Silva is not E.L.S.'s father has some tendency to make more probable the fact that E.L.S. was fathered by another man with whom Mrs. Silva had sexual intercourse.

Appellees argued that under Texas law, a child born during a marriage is presumed to be the biological child of the husband. *See* TEX.FAM.CODE ANN. § 12.02(a) (Vernon Supp.1993). That presumption may be rebutted only by clear and convincing evidence. TEX.FAM.CODE ANN. § 12.02(b). A blood test which positively excludes the

alleged father is clear and convincing evidence of non-paternity. *In the Interest of S.C.V.,* 750 S.W.2d 762, 764 (Tex.1988). The presumption is also rebutted by a court decree establishing paternity of the child by another man. TEX.FAM.CODE ANN. § 12.-02(b).

In this case, appellants offered a final decree rendered by the 138th District Court of Willacy County which established the non-paternity of Mr. Silva to rebut the presumption that Mr. Silva was E.L.S.'s biological father. The 138th District Court's decree states in part as follows:

> On April 15, 1991, in response to the prior order of this Court, ordering all parties to appear in person or by counsel, a pretrial conference was held. At the conclusion of the pre-trial conference the Court found that paternity tests show, by clear and convincing evidence, that NOE SILVA is not the biological father of the child, [E.L.S.]

The trial court refused to allow the decree of non-paternity into evidence.

We should rationally construe TEX.FAM. CODE ANN. § 12.02(b) to permit a judicial decree of non-paternity to be admissible to rebut the presumption of paternity. The State has an important interest in the adjudication of parent-child relationships and desires to act in the best interest of children. *See Attorney General of Texas v. Lavan,* 833 S.W.2d 952, 954 (Tex.1992). Accordingly, the Legislature created a procedure which requires a higher burden of proof and mandated certain procedures and evidence to ensure valid findings of non-paternity. In cases in which the mother, the child, or the presumed father seek to deny paternity of the presumed father, the court must conduct pretrial proceedings and order scientifically accepted paternity tests according to TEX.FAM.CODE ANN. §§ 13.02–13.03 (Vernon Supp.1993). Such paternity tests can verify *non-paternity* to an absolute certainty, even though they cannot verify *paternity* to an absolute certainty. Absurd results would flow from a construction of the statute that judicial decrees of non-paternity founded upon clear and convincing evidence, *i.e.,* scientifically accepted paternity tests, do not rebut the presumption of paternity.

The only remaining question is whether the judgment is admissible against a stranger to the original proceeding. Ordinarily, judgments are not admissible to prove the matters adjudicated unless the parties and the subject matter in each suit are identical. *John Deere Co. v. May,* 773 S.W.2d 369, 374 (Tex.App.—Waco 1989, writ denied); *Allen v. Great Liberty Life Ins. Co.,* 522 S.W.2d 247, 251 (Tex.Civ. App.—Eastland 1975, writ ref'd n.r.e.). However, a judgment is admissible against a stranger to prove the fact and legal consequences of its existence. *McCamant v. Roberts,* 66 Tex. 260, 1 S.W. 260, 261 (1886); *Allen,* 522 S.W.2d at 251; 50 C.J.S. § 821 (1955). A legal consequence of a decree of non-paternity is the rebuttal of the presumption of paternity; in fact, the consequence of a decree of non-paternity is that there is no longer a legal parent-child relationship.

A stranger to an adjudication of non-paternity is not precluded from relitigating the issue of paternity. *Attorney General of Texas v. Lavan,* 833 S.W.2d 952, 955 (Tex.1992). A ruling that a judicial decree rebuts a presumption of paternity does not necessarily preclude a stranger from litigating the issue of paternity in a subsequent suit, it only removes the presumption.

A presumption is a rule of law which draws a particular inference as to the existence of one fact, not actually known, arising from its usual connection with other particular facts which are known or proved. *Beck v. Sheppard,* 566 S.W.2d 569, 571 (Tex.1978). Presumptions compel the trier of fact to reach a conclusion in the absence of evidence to the contrary. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975). Evidence rebutting the presumption renders it void, but the facts underlying the presumption may still be used by the trier of fact to find the fact which the presumption would compel in absence of rebuttal evidence. *Prudential Ins. Co. of Am. v. Uribe,* 595 S.W.2d 554, 562 (Tex. Civ.App.—San Antonio 1979, writ ref'd

n.r.e.). Consequently, appellees in this case can still argue the marriage as a fact from which the jury can infer Mr. Silva's paternity of E.L.S.

I would hold that the trial court erred by refusing to admit the prior decree of non-paternity into evidence. Looking at the entire record, I find that the only evidence offered at trial was Mrs. Silva's uncontroverted testimony that she was separated from her husband for a period which coincided with E.L.S.'s gestation, that she only had intercourse with Mr. Enz during the relevant period, and that she was married to Mr. Silva at the time.

Appellees stated in opening argument:

I think you will see that the only thing you are going to be hearing is the testimony of a lady whose motives are completely questionable, who admits to adultery, who is here attempting to have the most critical interest in the State of Texas completely wiped away, and that is to create illegitimacy as opposed to creating legitimacy.

The Court will tell you in the instructions that this little girl, as she sits here, has a father. Her father is Noe Silva. The state says she has a father, that Noe Silva is her father, because the evidence will demonstrate she was born of a marriage. When she was conceived her mother was married to Noe Silva.

* * * * * *

I think you need to be aware of the fact that they not only have a burden to try and establish paternity by a certain standard, we can't forget about Noe Silva, because Noe Silva today is the father. The presumption exists and is created by law, and they must produce evidence that he is not. There is only certain ways that they can do that. The Court will instruct you as to what those ways are.

I submit to you that after you hear all of the evidence and after the Court provides you with the instructions, you are going to find that the law is what's right, that Noe Silva is the father, and that they cannot overcome that presumption.

Appellees stated in closing argument:

Is Noe a part of this action? No, he's not. You can consider that. Where is Noe, the father to this beautiful little girl?

* * * * * *

If you believe Noe is the father, since they were married at the time, she can't have two fathers. It's just as simple as that. You can consider all these things.

* * * * * *

We sure know that Noe Silva is a good man. He continues to be married to her. We know that when a child is born of a husband and wife that the community is going to believe that that is the child of that marriage. That's why the law is the way it is. You can't have two fathers.

Given the arguments of appellees and the evidence adduced at trial, I find that denying appellant the right to produce competent evidence rebutting a presumption of paternity was error reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX. R.APP.P. 81(b)(1). I would sustain appellant's sixth point of error, reverse the judgment of the trial court, and remand the case for a new trial.

For the reasons stated above, I respectfully dissent.